# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ASHLEY FORTES,<br><br>Plaintiff,<br><br>v.<br><br>CODAC, Inc.,<br><br>Defendant. | C.A. No. 25-cv-296-JJM-AEM |

| | |
|---|---|
| GABRIELA LIZ SANTANA,<br><br>Plaintiff,<br><br>v.<br><br>CODAC, Inc.,<br><br>Defendant. | C.A. No. 25-cv-299-JJM-AEM |

## MEMORANDUM AND ORDER

AMY E. MOSES, United States Magistrate Judge.

Before this Court for determination are Motions to Strike Objections, Compel Discovery, and for Sanctions filed by Plaintiffs in separate actions against their same

former employer, Defendant CODAC, Inc. Plaintiff Ashley Fortes and Plaintiff Gabriela Liz Santana (collectively, "Plaintiffs") seek to compel further answers to interrogatories and further responses to requests for production of documents; to strike CODAC's objections to those interrogatories and requests for production; and for the Court to impose sanctions on CODAC. Dkt. 296, ECF No. 16; Dkt. 299, ECF No. 16.

## I. BACKGROUND

These two cases stem from a similar factual background. Ms. Fortes and Ms. Santana worked together and each filed suit against their former employer, CODAC. Dkt. 296, ECF No. 1; Dkt. 299, ECF No. 1.

Ms. Fortes is a Cape Verdean woman, clinically diagnosed with anxiety, who was hired by CODAC on December 19, 2019, as a counselor. Dkt. 296, ECF No. 1 ¶¶ 10-12. At some point she was promoted to Program Director of the Mobile Medical Unit (MMU). *Id.* ¶ 13. Ms. Fortes requested—and was granted—leave as a reasonable accommodation to deal with her anxiety; when she returned she was placed on a performance improvement plan. *Id.* ¶¶ 20-21. Ms. Santana is a Latina woman hired by CODAC in or around August 2023 as a counselor. Dkt. 299, ECF No. 1 ¶¶ 10-11. At some point she was promoted to Clinical Supervisor of the MMU. *Id.* ¶ 12. As discussed below, Plaintiffs were terminated from their positions. Dkt. 296, ECF No. 1 ¶ 60; Dkt. 299, ECF No. 1 ¶ 53.

Plaintiffs claim that their termination of employment from CODAC violated the Rhode Island Whistleblower's Protection Act, Title VII of the Civil Rights Act of

1962, the Civil Rights Act of 1866, the Rhode Island Fair Employment Practices Act, and the Rhode Island Civil Rights Act. Dkt. 296, ECF No. 1 ¶¶ 81-88; Dkt. 299, ECF No. 1 ¶¶ 73-80. The Civil Rights claims are based upon race and sex discrimination. Dkt. 296, ECF No. 1 ¶¶ 82-88; Dkt. 299, ECF No. 1 ¶¶ 74-80. Ms. Fortes brings two additional claims: disability discrimination in violation of both the Americans with Disabilities Act and the Rhode Island Civil Rights of People with Disabilities Act. Dkt. 296, ECF No. 1 ¶¶ 90-92.

Plaintiffs' duties included signing off on Medication-Assisted Treatment forms (MAT Forms) attesting to the fact that they met with a client and rendered services. Dkt. 296, ECF No. 1 ¶ 38; Dkt. 299, ECF No. 1 ¶ 31. Those MAT Forms included the patient's name, ID number, chart number and code, date of appointment, time of appointment, length of session, location of program, a section for notes, and a signature block. Dkt. 296, ECF No. 1 ¶ 39; Dkt. 299, ECF No. 1 ¶ 32. The MAT Forms were then submitted to Medicare/Medicaid for reimbursement. Dkt. 296, ECF No. 1 ¶¶ 40-41; Dkt. 299, No. ECF 1 ¶¶ 33-34. According to Plaintiffs, submitting a form without having met with a patient as detailed in the form would both constitute fraud and violate CODAC's internal policies. *Id.*

Plaintiffs aver that they were taught by "[p]revious white program directors . . . to use a placeholder technique, such that the clinician would complete the entire form and in the notes section enter an 'X' as a placeholder." Dkt. 296, ECF No. 1 ¶ 44; Dkt. 299, ECF No. 1 ¶ 37. Plaintiffs would then return to the notes section

and supplement the report as necessary before submitting the MAT Forms to Medicare/Medicaid. Dkt. 296, ECF No. 1 ¶ 46; Dkt. 299, ECF No. 1 ¶ 39.

Plaintiffs contend that John LeBeau, a white man who began working for CODAC in January 2024 at the MMU, was not diligent with his notes. Dkt. 296, ECF No. 1 ¶¶ 27-28, 48; Dkt. 299, ECF No. 1 ¶¶ 22-23, 40. Ms. Santana reported to Ms. Fortes that Mr. LeBeau was intentionally entering inaccurate information in his MAT Forms and submitting them without corrections, including Mr. LeBeau reporting that he met with clients when he did not meet with them, false information about clients, and, on at least one occasion, falsely reporting a patient's medication. Dkt. 296, ECF No. 1 ¶ 49; Dkt. 299, ECF No. 1 ¶ 41.

On March 6, 2024, Ms. Fortes emailed her manager, Laurie McNiff, about Mr. LeBeau submitting these erroneous records. Dkt. 296, ECF No. 1 ¶¶ 18, 53; Dkt. 299, ECF No. 1 ¶¶ 20, 45. Rather than disciplining Mr. LeBeau, Plaintiffs contend that he was transferred to CODAC's Providence office and given preferential treatment. Dkt. 296, ECF No. 1 ¶¶ 56-58; Dkt. 299, ECF No. 1 ¶¶ 48-50. While Mr. LeBeau did not face any adverse consequences for his fraudulent paperwork, Plaintiffs were terminated from their employment less than a month later on April 3, 2024, for their practice of using a placeholder on MAT Forms and not updating the notes section within 24-48 hours, a rule they claim they were never informed of. Dkt. 296, ECF No. 1 ¶¶ 60, 64-65, 67; Dkt. 299, ECF No. 1 ¶¶ 53, 57-58, 60. Plaintiffs were advised during their terminations that the use of the placeholders was

discovered during a "random" audit. Dkt. 296, ECF No. 1 ¶¶ 64-65; Dkt. 299, ECF No. 1 ¶¶ 57-58.

Ms. Fortes filed her action on June 23, 2025, in response to her termination, while Ms. Santana filed her action the next day, June 24, 2025. Dkt. 296; Dkt. 299. During the course of discovery, an agreed-upon protective order was entered in both actions. Dkt. 296, ECF No. 13; Dkt. 299, ECF No. 13. Plaintiffs served interrogatories and requests for production of documents on CODAC. Dkt. 296, ECF No. 16; Dkt. 299, ECF No. 16. Finding CODAC's responses deficient, Plaintiffs communicated with CODAC and later received some supplemental responses; however, they contend those supplemental responses were not sufficient. Dkt. 296, ECF No. 16; Dkt. 299, ECF No. 16. Consequently, Plaintiffs filed their respective Motions to Strike Objections, Compel Discovery, and for Sanctions on August 26, 2026. Dkt. 296, ECF No. 16; Dkt. 299 ECF No. 16.[1]

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 26(b)(1) provides that a party is entitled to receive discovery on any matter that is relevant to any claim or defense in an action, proportional to the needs of the case, and is not privileged. The party seeking to compel has the initial burden to show that such information is relevant. *Chr. Hansen HMO GMBH v. Glycosyn LLC*, 733 F. Supp. 3d. 1, 4 (D. Mass. 2024). At the discovery stage, if the information in question might possibly be relevant, it should be

[1] Plaintiffs appear to have done so without requesting an informal discovery dispute conference despite that requirement in the Pretrial Scheduling Order. Dkt. 296, ECF No. 12; Dkt. 299, ECF No. 12.

considered discoverable. *LaRoe v. Div. of Bureau of Special Educ. Appeals*, C.A. No. 3:21-cv-30020-MGM, 2024 WL 1093052, at *2 (D. Mass. Mar. 13, 2024). If the movant clears that hurdle, then the burden shifts to the party opposing the motion to show that the discovery is improper. *Id.*

## III. DISCUSSION

Ms. Fortes seeks to compel further answers to her Interrogatories Nos. 11 and 16 and responses to her Requests for Production Nos. 8, 10, 13, 18, 24, and 26; to strike CODAC's objections to those interrogatories and requests for production; and for the Court to impose sanctions on CODAC. Dkt. 296, ECF No. 16. Ms. Santana makes the same set of requests in her motion relative to her discovery materials. Dkt. 299, ECF No. 16. Each request will be reviewed in turn, grouped by subject matter.

### A. Comparators

In Interrogatory Nos. 11 and 16, Plaintiffs request the identities and demographic information of individuals subjected to the audit that led to Plaintiff's termination (Int. No. 11) as well as those of individuals CODAC has disciplined or terminated for using a placeholder in client documentation (Int. No 16). Dkt. 296, ECF No. 16-4 Int. Nos. 11, 16; Dkt. 299, ECF No. 16-4 Int. Nos. 11, 16. The interrogatories are identical for both Plaintiffs. *Compare* Dkt. 296, ECF No. 16-4 Int. Nos. 11, 16, *with* Dkt. 299, ECF No. 16-4 Int. Nos. 11, 16. Similarly, in Requests for Production Nos. 8 and 24, Ms. Fortes requests that CODAC produce all documents related to the discipline, termination, or transfer of any counselor or clinician since

December 2018 (RFP No. 8), and all documents identifying employees who were terminated, disciplined, or transferred between January 2019 and April 2024, including their demographic information (RFP No. 24). Dkt. 296, ECF No. 16-5 RFP Nos. 8, 24. Ms. Santana, in her Requests for Production Nos. 8 and 24, requests the same information; however, she seeks information going back to August 2022 for Request for Production No. 8, and between January 2023 and April 2024 for Request for Production No. 24. Dkt. 299, ECF No. 16-5 RFP Nos. 8, 24.

CODAC responded to both sets of interrogatories with a boilerplate objection that the information Plaintiffs sought is "overly broad, unduly burdensome, seeks information that is not relevant to any party's claims, and is not proportional to the needs of the case." Dkt. 296, ECF No. 16-4 Int. Nos. 11, 16; Dkt. 299, ECF No. 16-4 Int. Nos. 11, 16. Likewise, CODAC responded with the same objections in response to the requests for production, but also included claims of attorney-client and work-product privileges, and argued Plaintiffs were shifting the burden of proof onto CODAC. Dkt. 296, ECF No. 16-5 RFP Nos. 8, 24; Dkt. 299, ECF No. 16-5 RFP Nos. 8, 24.

Notwithstanding those objections, CODAC provided some, albeit incomplete, responsive information. It appears that CODAC provided demographic information about employees it has terminated or disciplined for the use of placeholders in client documentation, but not their names and contact information. *See* Dkt. 296, ECF No. 16 at 6-8, 16-17; ECF No. 17 at 2-5; ECF No. 18 at 1-4; Dkt. 299, ECF No. 16 at 6-8, 16-17; ECF No. 17 at 2-5; ECF No. 18 at 1-4.

Plaintiffs argue that they are entitled to the names and contact information to show that the audit which led to Plaintiffs' termination was not random and to access information about potential comparators to prove their claims of discrimination. Dkt. 296, ECF No. 16 at 6-8, 16-17; ECF No. 18 at 1-4; Dkt. 299, ECF No. 16 at 6-8, 16-17; ECF No. 18 at 1-4. CODAC counters that they have substantially complied by providing the demographic information requested, but that providing the identities of those employees violates those employees' privacy rights and that Plaintiffs' "need for evidence to support [their] unsubstantiated claims does not supersede the privacy rights of third-party employees who are not parties to this action." Dkt. 296, ECF No. 17 at 2-5; Dkt. 299, ECF No. 17 at 2-5.

The Federal Rules of Civil Procedure allow for "[p]arties . . . [to] obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). There is no carve-out in the rules to protect the identities of non-party information when a party in the action is in possession of such information. *See id.* So long as that information is relevant to a claim or defense, is not privileged, and is proportional to the needs of the action, such information is discoverable. *Id.* Moreover, the protective orders in both cases serve to protect the privacy of third-party employees. *See Brown v. Wal-Mart Assocs., Inc.*, 616 F. Supp. 3d 137, 142-44 (D. Mass. 2022) (employees' identities discoverable for purposes of comparator information and protective order addresses privacy concerns).

Here, Plaintiffs have explained how the requested information is relevant: so that they may show CODAC's proffered neutral explanation of Plaintiffs' termination is pretextual by gathering information about potential comparators. Dkt. 296, ECF No. 16 at 6-8, 16-17; ECF No. 18 at 1-4; Dkt. 299, ECF No. 16 at 6-8, 16-17; ECF No. 18 at 1-4. Because Plaintiffs seek this evidence for comparators, "[r]easonableness is the touchstone: while the plaintiff's case and the comparison cases that he [or she] advances need not be perfect replicas, they must closely resemble one another in respect to relevant facts and circumstances." *Diaz v. City of Somerville*, 59 F.4th 24, 32 (1st Cir. 2023) (quoting *Conward v. Cambridge Sch. Comm.*, 171 F.3d 12, 20 (1st Cir. 1999)). The First Circuit explained that the test should be whether similar factual elements exist in both the comparator's case and that of the claimant to support a reasoned analogy—or, "[i]n other words, apples should be compared to apples." *Id.* (quoting *Dartmouth Rev. v. Dartmouth Coll.*, 889 F.2d 13, 19 (1st Cir. 1989), overruled on other grounds by *Educadores Puertorriqueños En Acción v. Hernández*, 367 F.3d 61, 64, 66-67 (1st Cir. 2004)). Some of the factual elements to consider are whether the comparator's case deals with the same form of discrimination that came from the same decisionmaker or department as the complainant's case. *United States Equal Emp. Opportunity Comm'n v. Otis Worldwide Corp.*, C.A. No. 23-10612-MJJ, 2025 WL 1234152, at *6 (D. Mass. Apr. 29, 2025).

Interrogatory No. 11 requests that CODAC "[i]dentify all individuals who were subject to the audit that led to [Plaintiffs'] termination, including their race, sex, job

title, and audit findings." Interrogatory No. 16 requests CODAC to "[i]dentify[2] all individuals CODAC has disciplined or terminated for using a placeholder in client documentation, includ[ing] such individual's race, gender, position, and discipline." Those two interrogatories request information related to the same audit that led to Plaintiffs' termination and information about other employees being disciplined or terminated for the same reason Plaintiffs were terminated. The Court finds that both interrogatories seek an apples-to-apples comparison. *See Diaz*, 59 F.4th at 32.

CODAC offers no developed argument that the information is privileged, nor that providing the information is not proportional to the needs of the case—only that it infringes on privacy of non-parties. Dkt. 296, ECF No. 17 at 2-5; Dkt. 299, ECF No. 17 at 2-5. The agreed-upon protective orders (Dkt. 296, ECF No. 13; Dkt. 299, ECF No. 13) in place in these actions protects the privacy rights of their non-party employees by designating such documents as confidential. *See Brown*, 616 F. Supp. 3d at 142-44. Therefore, the Court GRANTS the Motions to Compel with respect to Interrogatories Nos. 11 and 16. If CODAC has a good faith basis to assert that responsive materials are privileged, it shall contemporaneously produce a privilege log.

The calculus is different with respect to Requests for Production Nos. 8, where Plaintiffs request documents related to the "discipline or termination of any counselor or clinician[.]" Dkt. 296, ECF 16-5 RFP No. 8; Dkt. 299, ECF 16-5 RFP No. 8.

---

[2] "Identify" is defined in Plaintiffs' interrogatories to include "the person's full name, last known address, telephone number, and relationship to [CODAC]." Dkt. 296, ECF No. 16 at 8; Dkt. 299, ECF No. 16 at 8.

Ms. Fortes seeks such documents going back to December 2018 and Ms. Santana back to August 2022. These requests seek information well beyond Plaintiffs' reasons for termination and, further, are not tied to the decision-makers or departments involved in Plaintiffs' terminations. *See Otis Worldwide Corp.*, 2025 WL 1234152, at *6. For these reasons, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' Motions to Compel with respect to Requests for Production Nos. 8: CODAC must produce the requested documents related to the "discipline or termination of any counselor or clinician . . . including without limitation any notes, comments, documented procedures, text messages, or email correspondence" with respect to the "discipline and termination of any counselor or clinician" who worked in the same department as Plaintiffs; who were disciplined or terminated by the same individual(s) involved in Plaintiffs' terminations; or who were disciplined or terminated for the same reasons as Plaintiffs. *See id.*

Similarly, Requests for Production Nos. 24 seek documents relating to the discipline, termination, or transfer of any employee at CODAC. These requests are too broad as they seek documents relating to any employee disciplined or terminated by CODAC. *See Otis Worldwide Corp.*, 2025 WL 1234152, at *6. Because these requests are not narrowly tailored to comparators in a similar situation as Plaintiffs, the Court DENIES Plaintiffs' Motions to Compel with respect to Requests for Production Nos. 24.[3]

---

[3] The Court need not narrow these requests as to do so would result in requests redundant with the modified Requests for Production Nos. 8.

**B. Mr. LeBeau**

Plaintiffs requested the production of "all documents related to [Mr. LeBeau's] employment, including his personnel file, disciplinary records, promotional history, and termination documentation" (RFP No. 10) and "all documents and communications related to the hiring and/or firing of [him]" (RFP No. 26). Dkt. 296, ECF No. 16-5 at RFP Nos. 10, 26; Dkt. 299, ECF No. 16-5 at RFP Nos. 10, 26. CODAC objected on the basis of attorney-client and work-product privileges, and on the basis that Plaintiffs are attempting to shift the burden of proof onto CODAC. Dkt. 296, ECF No. 16-5 at RFP Nos. 10, 26; Dkt. 299, ECF No. 16-5 at RFP Nos. 10, 26.

Plaintiffs highlight their need for information pertaining to Mr. LeBeau by noting that he is the employee Plaintiffs reported for allegedly fabricating information on MAT Forms a month prior to their own terminations. Dkt. 296, ECF No. 16 at 11-12, 17-19; Dkt. 299, ECF No. 16 at 11-12, 17-19. CODAC responds that Mr. LeBeau's privacy rights should prevent such discovery. Dkt. 296, ECF No. 17 at 5; Dkt. 299, ECF No. 17 at 5. It also contends that he was not terminated but rather that he resigned. Dkt. 296, ECF No. 17 at 5; Dkt. 299, ECF No. 17 at 5.

CODAC's knowledge of Mr. LeBeau's MAT Forms errors and CODAC's reaction to them goes to the heart of Plaintiffs' retaliation claims. The fact that he worked in the same department as Plaintiffs and allegedly made more serious errors on his MAT Forms than Plaintiffs without discipline makes him a relevant comparator for the discrimination claims. The Court agrees with Plaintiffs' assertion that Mr. LeBeau's personnel file and other documents and communications

associated with his promotional history, disciplinary records, and the end of his employment with CODAC are relevant and proportional to the claims at issue in these two actions and are therefore discoverable under Rule 26(b)(1), regardless of whether he was terminated or if he resigned. However, Plaintiffs have not met their initial burden to show that information about Mr. LeBeau's hiring, beyond what is in his personnel file, is relevant to any of Plaintiffs' claims.

As a result, the Court GRANTS Plaintiffs' Motion to Compel for Requests for Production Nos. 10: CODAC shall produce "all documents related to [Mr. LeBeau's] employment, including his personnel file, disciplinary records, promotional history, and termination documentation." The Court GRANTS IN PART and DENIES IN PART Plaintiffs' Motions to Compel for Requests for Production Nos. 26: CODAC need only produce "all documents related to the *firing* of" Mr. LeBeau, should any exist. CODAC may choose to designate Mr. LeBeau's personnel file, other documents, and communications surrounding them as confidential pursuant to the protective orders entered in these two actions if it believes such information should be protected.

**C. Other Employee Complaints**

In Requests for Production Nos. 13, Plaintiffs seek information relating to CODAC employees' "formal and/or informal complaints, lawsuits, claims, grievances, administrative actions, charges, or investigations made with respect to counselors', clinicians', and clinical supervisors' work at [CODAC] with respect to wrongful termination, whistleblower, discrimination and retaliation claims, throughout the relevant period[.]" Dkt. 296, ECF 16-5 at RFP No. 13; Dkt. 299, ECF No. 16-5 at RFP

No. 13. Plaintiffs contend they need this information to determine how CODAC handled similar issues in the past and compare it to how CODAC terminated Plaintiffs to evaluate whether CODAC's proffered reason for their termination was pretextual. Dkt. 296, ECF No. 16 at 13; Dkt. 299, ECF No. 16 at 13.

CODAC originally objected on the basis of attorney-client and work-product privileges and asserted that the request was overly broad, irrelevant, and sought to shift the burden of proof onto CODAC. Dkt. 296, ECF 16-5 at RFP No. 13; Dkt. 299, ECF No. 16-5 at RFP No. 13. CODAC supplemented its original responses by indicating that it had no workers' compensation claims that related to stress or anxiety since 2022, and that other workers' compensation claims were for money claims and therefore not relevant. Dkt. 296, ECF 16-5 at RFP No. 13; Dkt. 299, ECF No. 16-5 at RFP No. 13.

The Court finds that information pertaining to complaints against CODAC and how CODAC ultimately handled those issues are relevant to the instant actions for purposes of comparator information insofar as those employees' allegations are similar to Plaintiffs'. *See Otis Worldwide Corp.*, 2025 WL 1234152, at * 6 ("Comparator discovery is relevant and proportional if it is limited to, *inter alia*, the same form of discrimination claimed by the plaintiff and to the same department or decisionmaker who may have contributed to the employment decisions that are the subject of the plaintiff's complaint.") Therefore the Court GRANTS IN PART AND DENIES IN PART Plaintiffs' Motions with respect to Requests for Production Nos. 13: CODAC must produce formal and/or informal complaints, lawsuits, claims,

grievances, administrative actions, charges, or investigations made with respect to counselors', clinicians', and clinical supervisors' work at [CODAC] with respect to wrongful termination, whistleblower, discrimination and retaliation claims, throughout the relevant period involving whistleblowers, retaliation, race discrimination, sex/gender discrimination, and in the case of Ms. Fortes, disability discrimination—and only those that involve the decisionmakers that terminated Plaintiffs or were asserted by employees in the same department as Plaintiffs. *Id.* If CODAC has a good faith basis to believe any responsive documents are privileged, then it shall contemporaneously produce a privilege log.

### D. Audits, Reports, and Findings Related to Medicare/Medicaid Compliance

In their Requests for Production Nos. 18, Plaintiffs seek "all internal audits, reports, or findings related to documentation compliance or Medicare/Medicaid submissions during the relevant period." Dkt. 296, ECF No. 16-5 at RFP No. 18; Dkt. 299, ECF No. 16-5 at RFP No. 18. CODAC, while objecting on the same basis as it did to Requests for Production Nos. 13, provided a response labeled Exhibit M. Dkt. 296, ECF No. 16-5 at RFP No. 18; Dkt. 299, ECF No. 16-5 at RFP No. 18.

Plaintiffs aver that Exhibit M is a spreadsheet that has been converted, presumably, into a non-native format and that it is not clear what the information in it conveys.[4] Dkt. 296, ECF No. 16 at 14; Dkt. 299, ECF No. 16 at 14. They also note

---

[4] The Court reviewed the portion of Exhibit M submitted by Plaintiffs, *see* Dkt. 296, ECF No. 16-6; Dkt. 299, ECF No. 16-6, and agrees with Plaintiffs that it is hard to follow.

that they worked in the MMU and that office is not explicitly accounted for in Exhibit M. Dkt. 296, ECF No. 16 at 14-15; Dkt. 299, ECF No. 16 at 14-15. Further, Plaintiffs complain that there is no indication that Exhibit M contains evidence of the audits that led to Plaintiffs' termination. Dkt. 296, ECF No. 16 at 15; Dkt. 299, ECF No. 16 at 15. Plaintiffs ultimately seek to compel information surrounding the specific audits that led to their termination and to receive Exhibit M in its native format. Dkt. 296, ECF No. 16 at 15; Dkt. 299, ECF No. 16 at 15.

CODAC claims that Exhibit M contains all responsive information to Requests for Production Nos. 18. Dkt. 296, ECF No. 17 at 6; Dkt. 299, ECF No. 17 at 6. It also explains that, because the MMU is small and has very few employees, it was grouped with the Providence office in Exhibit M. Dkt. 296, ECF No. 17 at 6; Dkt. 299, ECF No. 17 at 6. CODAC contends that it has no documents pertaining to the audits that led to the termination of Plaintiffs because those audits were performed "in-house" and thus were "done in a different manner than CODAC's audits performed for the State and federal governmental agencies." Dkt. 296, ECF No. 17 at 6; Dkt. 299, ECF No. 17 at 6.

Federal Rule of Civil Procedure Rule 34(b)(2)(E)(i) provides that "[a] party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request[.]" CODAC therefore must either provide Plaintiffs with Exhibit M as it keeps it in its "usual course of business" or "organize and label" it in such a way that it corresponds to the categories in Requests for Production Nos. 18. The Court encourages the parties to

work together in determining the best manner for Exhibit M to be produced between either of those options. Because there is a protective order in place, employees' names need not be redacted; the names of patients, however, may remain redacted. Further, the Court finds it hard to fathom that CODAC performed in-house audits "for cause" and then relied on those audits to terminate the employment of two individuals, but the only documentation related to the audits is Exhibit M. Dkt. 296, ECF No. 17 at 6; Dkt. 299, ECF No. 17 at 6. The Court is baffled by CODAC's explanation that, because they were a different type of audits than the ones state or federal agencies require, it has no records beyond Exhibit M. As such, Plaintiffs' Motions to Compel relative to Requests for Production Nos. 18 are GRANTED: CODAC must conduct a thorough search for documentation responsive to Request for Production Nos. 18.

**E. Motion for Sanctions**

Plaintiffs seek sanctions under Federal Rules of Civil Procedure 26(g) and 37(a)(5). With respect to Rule 26(g), the Court does not find CODAC's concerns of privacy relative to third-party employees to be frivolous, so sanctions are not warranted. As to Rule 37(a)(5)(A), the Court has denied aspects of Plaintiffs' Motions to Compel and is exercising its discretion not to impose sanctions at this time. *See* Fed. R. Civ. P. 37(a)(5)(C). CODAC and its counsel are on notice of the potential for sanctions for any future discovery abuses, including noncompliance with this Memorandum & Order.

## IV. CONCLUSION

As detailed above, Plaintiffs' Motions to Strike Objections and Compel Discovery are GRANTED IN PART and DENIED IN PART: they are GRANTED as they relate to Interrogatory Nos. 11 and 16, as well as to Requests for Production Nos. 10 and 18; they are GRANTED IN PART and DENIED IN PART with respect to Requests for Production Nos. 8, 13, and 26; they are DENIED relative to Requests for Production Nos. 24; they are DENIED with respect to Sanctions; and any other requested relief is DENIED. CODAC shall produce answers and documents by December 4, 2026.

IT IS SO ORDERED.

/s/ Amy E. Moses
AMY E. MOSES
United States Magistrate Judge

November 16, 2026